UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-CV-23466-SEITZ/SIMONTON

JMA, INC., et al.,

    Plaintiffs,

v.

BIOTRONIK SE & CO. KG., et al.,

    Defendants.

_____/

## ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This matter is before the Court on Defendant Biotronik SE & Co.'s Motion to Dismiss for Lack of Personal Jurisdiction [DE-31]. This action arises from the alleged breach of sales representative agreements, which granted Plaintiffs Joseph LaPadula, LaPadula, Inc., Scott Mathison, and JMA, Inc. exclusive rights to sell certain medical devices in a defined area of south Florida. Plaintiffs allege that Defendants breached the agreements by allowing others to sell the devices within the same area and by terminating the agreements. Defendant Biotronik SE & Co. (Biotronik SE), a German company, seeks to dismiss the claims against them for lack of personal jurisdiction. Plaintiffs have responded [DE-39] and Biotronik SE filed a reply [DE-40]. Because Biotronik SE does not fall within Florida's long-arm statute, Biotronik SE's motion is granted.

### I. Material Facts[1]

**The Parties**

Plaintiffs Joseph LaPadula (LaPadula) and Scott Mathison (Mathison) are individuals

---

[1] The facts are taken from the complaint [DE-1], unless otherwise indicated.

who reside in Miami-Dade County, Florida. Plaintiff LaPadula, Inc. is an administratively dissolved Florida corporation. JMA, Inc., Southern Pace, Inc., and ACL of South Florida, Inc. are all Florida corporations. St. Jude Medical S.C., Inc. (St. Jude) is a Minnesota corporation.

Defendant Biotronik SE is a German corporation with its principal place of business in Berlin, Germany. Biotronik, Inc. is an Oregon corporation with its principal place of business in Lake Oswego, Oregon. According to the sworn Declaration of Susanne Bernt [DE-31-1], submitted by Biotronik SE in support of its motion, Biotronik, Inc. and Biotronik SE are sister companies owned by the same parent, MS Holding II SE, a Germany company. According to the Bernt Declaration, Biotronik SE does not operate, conduct, engage in, or carry on business in Florida and it is not registered or licensed to do business in Florida. Additionally, according to Bernt, Biotronik SE does not exercise any operational control over Biotronik, Inc., the two companies do not share any officers or directors, and each operates as a distinct entity. The Bernt Declaration further states that Biotronik SE manufacturers and sells cardiac rhythm management products (devices) from its offices in Germany to its customers, including Biotrinok, Inc. and, thus, the relationship between Biotronik SE and Biotronik, Inc. is that of buyer and seller.

In opposition to the motion, LaPadula has submitted a sworn declaration [DE-39-1], in which he states that he believes that the devices were manufactured in part in Oregon by some Biotronik entity. However, the devices he sold were cased, finished, and stamped in Germany by Biotronik SE. According to LaPadula, he believed that he was an independent sales representative of any Biotronik entity that actually manufactured the devices and that he was working for the benefit of Biotronik SE, as well as Biotronik, Inc. Further, LaPadula received communications directly from Biotronik SE, specifically a memorandum announcing an Original

Equipment Manufacture Agreement between Biotronik SE and a competitor. According to LaPadula, he also received a sales award directly from Biotronik SE. Additionally, LaPadula states that Biotrinok SE either initiated or approved budgets for his territory, releases of new products, and fellowship and education programs for his territory.

### The Representative Agreements

In August 2009, Biotronik, Inc. and Plaintiffs LaPadula, JMA, Inc., and Mathison entered into an Authorized Sales Representative Agreement, effective August 1, 2009 and scheduled to expire on March 31, 2015. Prior to that Biotronik, Inc. and LaPadula and J.A. LaPadula, Inc. entered into an Independent Representative Agreement, effective January 1, 2006 and set to expire on December 31, 2015. Under these Representative Agreements, LaPadula, LaPadula, Inc., JMA, Inc., and Mathison agreed to market and sell Biotronik devices in certain defined areas of south Florida, to the exclusion of all other products and services. In return, Biotronik, Inc. promised LaPadula, LaPadula, Inc., JMA, Inc., and Mathison that they would have exclusive rights to sell Biotronik devices in those areas. The Representative Agreements define the term "Biotronik" as Biotronik, Inc.[2] There is no reference to Biotronik SE in the Representative Agreements.[3]

### The Claims

Sometime after the 2009 Representative Agreement was signed, Plaintiffs learned that

---

[2] The Representative Agreements have been filed under seal at DE-20. The definition is on the first page of text of both Agreements.

[3] Although Plaintiffs argue that the Agreements do not discern between different Biotronik entities [DE-38 at 8], as stated, the Agreements define the term "Biotronik" to mean Biotronik, Inc. Therefore, any reference to "Biotronik" in the Representative Agreements is a reference to Biotronik, Inc., not another Biotronik enitity.

3

Biotronik was selling components of its devices to other device companies who sold their products with the Biotronik components within the areas assigned to Plaintiffs, thus, infringing on the exclusivity granted in the Representative Agreements. Additionally, Biotronik, Inc. also removed certain areas from the areas assigned to LaPadula, LaPadula, Inc., JMA, Inc. and Mathison in the Representative Agreements. As a result, LaPadula, LaPadula, Inc., JMA, Inc., and Mathison began exploring possible employment with Plaintiff St. Jude. In response, Biotronik, Inc. terminated the Representative Agreements, which led to the filing of this action. Plaintiffs' four count complaint alleges one claim for breach of contract and three claims seeking declaratory judgment.

## II. Standard for Personal Jurisdiction

When considering a motion to dismiss for lack of personal jurisdiction, a district court must first determine whether a plaintiff has established a prima facie case of personal jurisdiction. *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005). In making this determination, the district court must accept the plaintiff's allegations as true, unless contradicted by defendant's affidavits. *Id.* "After a plaintiff has established a prima facie case for jurisdiction and the defendant has filed affidavits contesting jurisdiction, the plaintiff bears the burden of proving sufficient jurisdiction *by affidavits or other sworn statements.*" *Id.* at 276 (emphasis added). If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

To determine whether it has personal jurisdiction, the Court must conduct a two-part inquiry. First, it must determine if jurisdiction exists under Florida's long-arm statute, Florida

Statute § 48.193. Second, the Court must determine whether exercising jurisdiction over the defendants comports with the Due Process Clause. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). This is also a two-part determination. The Court must determine whether the defendants had sufficient minimum contacts with Florida and whether maintenance of the suit in Florida does not offend "traditional notions of fair play and substantial justice." *Id.* at 1284.

Under Florida's long-arm statute, a court may have general jurisdiction over a defendant or specific jurisdiction. A court has general jurisdiction over a defendant if the person is "engaged in substantial and not isolated activity within [Florida]." Fla. Stat. § 48.193(2). "Substantial and not isolated activity" means "continuous and systematic general business contact" with Florida. *Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (citation omitted). Specific jurisdiction arises when, inter alia, a defendant breaches a contract in Florida by failing to perform acts required by the contract to be performed in Florida, Fla. Stat. § 48.193(1)(g), or by operating, conducting or carrying on a business venture in Florida, Fla. Stat. § 48.193(1)(a). Specific jurisdiction only exists if the cause of action arises from the breach or out of the business operations. Fla. Stat. § 48.193.

The Due Process Clause prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there. *Licciardello*, 544 F.3d at 1284. This requirement has been met if a defendant has "purposely directed" his activities at residents of the forum and the litigation arises out of those activities. *Id.* Even if this requirement is met, a court must then determine if maintenance of the suit in the forum comports with traditional notions of fair play and substantial

justice. *Id.* In making this determination, a court may consider several factors, including "the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Id.*

## III. Analysis

Biotronik SE moves to dismiss Plaintiffs' complaint because Plaintiffs cannot establish either general or specific jurisdiction over it. Biotronik SE argues that the Court does not have personal jurisdiction over it pursuant to Florida's long-arm statute and, even if it did, exercising personal jurisdiction over Biotronik SE would offend due process. As set forth below, the Court does not have personal jurisdiction over Biotronik SE under Florida's long-arm statute. Thus, the Court need not address Biotronik SE's due process arguments.

### A. Plaintiffs Have Not Established General Jurisdiction Over Biotronik SE

Biotronik SE asserts that Plaintiffs cannot establish general jurisdiction over it because it is not engaged in substantial activity within Florida and the actions of Biotronik, Inc. cannot be attributed to Biotronik SE. While Plaintiffs' complaint alleges that Biotronik SE is the parent of Biotronik, Inc. and, as such, directed and controlled Biotronik, Inc.'s conduct, Biotronik SE has submitted the Bernt Declaration that establishes that Biotronik SE and Biotronik, Inc. are sister companies, both owned by MS Holding II SE. Furthermore, the Bernt Declaration establishes that Biotronik SE does not exercise any operational control of any nature whatsoever over Biotronik, Inc., the companies do not share officers or directors, and none of Biotronik Inc.'s employees are paid by Biotronik SE or vice versa. Thus, Biotronik SE argues that because it is not engaged in substantial activity in Florida, the Court does not have general jurisdiction over it.

While Plaintiffs' complaint alleged general jurisdiction exists pursuant to Florida Statute § 48.193(2), in response to the motion, Plaintiffs state that they do not have sufficient discovery to determine the extent of Biotronik SE's activities in Florida. Consequently, Plaintiffs have not met their burden of establishing general jurisdiction over Biotronik SE.

### B. Plaintiffs Have Not Established Specific Jurisdiction Over Biotronik SE

Biotronik SE also maintains that Plaintiffs cannot establish specific jurisdiction over it based on Florida Statute § 48.193(1)(a) or § 48.193(1)(g). Pursuant to § 48.193(1)(a), Biotronik SE would be subject to specific jurisdiction if it operates, conducts, engages in, or carries on a business or business venture in the state of Florida or has an office or agency in the state of Florida. Pursuant to § 48.193(1)(g), Biotronik SE would be subject to specific jurisdiction if it breaches a contract in Florida by failing to perform acts required by the contract to be performed in Florida. Biotronik SE asserts that there is no evidence that it was operating a business in Florida or that it beached a contract in Florida.

#### i. The Court Does Not Have Personal Jurisdiction Pursuant to Florida Statute § 48.193(1)(g)

The only contracts at issue here are the Representative Agreements. However, Biotronik SE is not a party to either of the Representative Agreements. Thus, Biotronik SE maintains that it cannot be subject to jurisdiction pursuant to § 48.193(1)(g). Plaintiffs argue that as a third-party beneficiary of the Representative Agreements, Biotronik SE had an obligation not to hinder Plaintiffs' ability to perform under the Representative Agreements. Thus, Plaintiffs seek to base jurisdiction on the fact that Biotronik SE is a third-party beneficiary of a contract that was to be performed in Florida. Plaintiffs, however, have failed to cite to any binding case law that would

support its proposition that being a third-party beneficiary to a contract is sufficient on its own to establish personal jurisdiction over that beneficiary.

Further, it is not clear that Biotronik SE is a third-party beneficiary of the Representative Agreements. In order to have a third-party beneficiary the contracting parties must express an intent to primarily and directly benefit the third-party. *Vencor Hospitals v. Blue Cross Blue Shield of Rhode Island*, 169 F.3d 677, 680 (11th Cir. 1999). There is no evidence that Plaintiffs and Biotronik, Inc. intended to *primarily and directly benefit* Biotronik SE when they entered into the Representative Agreements. According to the Bernt Declaration, Biotronik SE sold devices to Biotronik, Inc. Plaintiffs then sold the devices as representatives of Biotronik, Inc. There is no evidence that any benefit passed directly to Biotronik SE as a result of the Representative Agreements. Given the relationships between the parties, to say that Biotronik SE was a third-party beneficiary of the Representative Agreements would make every manufacturer of a good the third-party beneficiary of any contracts between an independent distributor of that good and its sales people. The definition of third-party beneficiary is not that broad. To support their position that Biotronik SE is a third-party beneficiary, Plaintiffs point to language in the Representative Agreements which refers to products manufactured by Biotronik and tested, approved and released by Biotronik. However, the Representative Agreements state that "Biotronik" refers to Biotronik, Inc., not Biotronik SE. Consequently, there is insufficient evidence to establish that Biotronik SE is a third-party beneficiary of the Representative Agreements. Accordingly, Plaintiffs have failed to meet their burden of establishing personal jurisdiction over Biotronik SE pursuant to Florida Statute § 48.193(1)(g).

### ii. The Court Does Not Have Personal Jurisdiction Pursuant to Florida Statute § 48.193(1)(a)

Plaintiffs also assert that the Court has personal jurisdiction over Biotronik SE based on Florida Statute § 48.193(1)(a) because Biotronik SE directly interacted with Plaintiff LaPadula as a member of its sales force. Thus, Plaintiffs argue that LaPadula was Biotronik SE's agent, which would subject Biotronik SE to personal jurisdiction. While Plaintiffs are correct that an agent's actions can subject the principal to jurisdiction, Plaintiffs have presented no evidence that LaPadula was an agent of Biotronik SE.

First, the Representative Agreements are between Plaintiffs and Biotronik, Inc. Second, the sending of a memo about an agreement between Biotronik SE and another device manufacturer to sales representatives who sold Biotronik SE's product does not establish the existence of an agency relationship; nor does the receipt of a sales award. In order to establish an agency relationship Plaintiffs would have to establish three elements: (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990). The evidence relied upon by Plaintiffs does not establish the existence of an agency relationship between LaPadula and Biotronik SE. Plaintiffs have not pointed to any evidence that Biotronik SE had control over LaPadula's actions. Thus, if Plaintiffs cannot establish that LaPadula was an agent of Biotronik SE, they cannot establish that Biotronik SE was operating, conducting, engaging in, or carrying on a business venture in Florida. Consequently, the Court does not have personal jurisdiction pursuant to Florida Statute § 48.193(1)(a).

### C. The Court Will Not Grant Jurisdictional Discovery

Plaintiffs request that, if the Court is reluctant to deny the motion to dismiss, it should grant Plaintiffs jurisdictional discovery. Plaintiffs, however, have not set out what discovery they seek; instead, they argue that "information revealed during . . . jurisdictional discovery could reveal possible additional or alternative claims" against one or both Defendants. Plaintiffs further suggest that "additional or alternative theories [of liability] might surface as a result of jurisdictional discovery." Defendants oppose any jurisdictional discovery because such discovery would amount to a fishing expedition.

Jurisdictional discovery has been explained as follows:

> The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is *not* a vehicle for a "'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1305 (N.D. Ga. 2005); *Vogt v. Greenmarine Holding, LLC*, No. 1:01–cv–0311–JOF, 2002 WL 534542, at *7 (N.D. Ga. Feb. 20, 2002) (denying jurisdictional discovery because the evidence the plaintiff "anticipated being able to adduce in the discovery process" would "still have failed to make out a prima facie case of personal jurisdiction"); *see also Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) ("[Jurisdictional] discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'").

*Atlantis Hydroponics, Inc. v. International Growers Supply, Inc.*, – F. Supp. 2d –, 2013 WL 28102 (N.D. Ga. 2013). Here, Plaintiffs are not trying to ascertain the truth of the jurisdictional allegations asserted in the complaint. They apparently concede that the allegations of a parent-subsidiary relationship are incorrect. *See* DE-39 at 4, n.10. Instead, Plaintiffs are simply searching for a new basis for jurisdiction, not based on anything pled in the complaint. Furthermore, they also appear to be searching for potential additional causes of action. This

would be, by definition, a "fishing expedition." The Court also notes that Plaintiffs have not affirmatively sought jurisdictional discovery; they have not filed a motion seeking such or sought a stay of this motion pending jurisdictional discovery. Consequently, Plaintiffs' request for jurisdictional discovery is denied. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009) (finding district court did not abuse its discretion by denying jurisdictional discovery when plaintiff did not formally move for jurisdictional discovery but, instead, buried the request in its briefs as an alternative to dismissal and when plaintiff did not take any affirmative steps or formal action to compel discovery).

Accordingly, it is

ORDERED that Defendant Biotronik SE & Co.'s Motion to Dismiss for Lack of Personal Jurisdiction [DE-31] is GRANTED. Defendant Biotronik SE & Co. is dismissed from this case.

DONE and ORDERED in Miami, Florida, this 4rd day of April, 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record